[Cite as *State v. Triplett*, 2019-Ohio-2489.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## LOGAN COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,             CASE NO.  8-18-41

      v.

JONATHAN L. TRIPLETT,              O P I N I O N

      DEFENDANT-APPELLANT.

STATE OF OHIO,

      PLAINTIFF-APPELLEE,              CASE NO.  8-18-42

      v.

JONATHAN L. TRIPLETT,              O P I N I O N

      DEFENDANT-APPELLANT.

Appeals from Logan County Common Pleas Court
Trial Court Nos. CR 18 02 0029 and CR 18 04 0107

**Judgments Affirmed**

**Date of Decision:    June 24, 2019**

APPEARANCES:

    *Eric J. Allen* **for Appellant**

    *Sarah J. Warren* **for Appellee**

**ZIMMERMAN, P.J.**

{¶1} Defendant-appellant, Jonathan L. Triplett ("Triplett"), appeals the September 4, 2018 judgment entry of the Logan County Court of Common Pleas, Criminal Division, in case number CR18-02-0029 finding him guilty of two counts of trafficking in crack cocaine and one count of possession of crack cocaine (with a forfeiture specification) and the September 4, 2018 judgment entry of the Logan County Court of Common Pleas, Criminal Division, in case number CR18-04-0107 finding him guilty of one count of trafficking in powder cocaine (with a forfeiture specification). On appeal, Triplett asserts three assignments of error. For the reasons that follow, we affirm the rulings of the trial court.

{¶2} The relevant facts in this appeal are not in dispute and reveal that shortly after Triplett was released from prison (for time served as a result of a drug trafficking conviction in Logan County), Triplett sold cocaine to two confidential informants working in collaboration with the Logan County Joint Drug Task Force ("Task Force"). (August 28, 2018 Tr. at 102-121, 123-126); (September 4, 2018 Tr. at 4, 9, 10, 17). On February 3, 2018, Triplett was arrested as a result of the controlled drug buys and was found to be in possession of two hundred and eighty-four dollars ($284.00) in cash and two (2) cell phones. (August 28, 2018 Tr. at 177, 190). Thereafter, the Task Force obtained a search warrant for Triplett's apartment (where he cohabitated with his girlfriend), wherein crack cocaine was discovered in

an upstairs bedroom dresser drawer.  (August 28, 2018 Tr. at 132, 133, 135, 136, 141, 144, 180, 206, 207, 211, 215, 218).  Finally, subsequent to his indictment in case number CR18-02-0029 and while he was released on bond, Triplett was arrested for another controlled drug buy for selling powder cocaine to a CI.  (August 28, 2018 Tr. at 154-165, 187, 189); (September 4, 2018 Tr. at 9, 11).  During that arrest, Triplett was found in possession of four hundred and thirty-eight dollars ($438.00) in cash.  (August 28, 2018 Tr. at 177, 190).

{¶3} On February 13, 2018, the Logan County Grand Jury indicted Triplett in case number CR18-02-0029 on: Count One, trafficking in cocaine, in violation of R.C. 2925.03(A)(1), (C)(4)(a), a felony of the fifth degree; Count Two, trafficking in cocaine, in violation of R.C. 2925.03(A)(1), (C)(4)(a), a felony of the fifth degree; and Count Three, possession of cocaine, in violation of R.C. 2925.11(A), (C)(4)(b), a felony of the fourth degree, with a specification for forfeiture of money in a drug case in violation of R.C. 2941.1417(A).  (Case No. CR18-02-0029, Doc. No. 4).  Triplett was later indicted by the Logan County Grand Jury on April 10, 2018 in case number CR18-04-0107 for one count of trafficking in cocaine, in violation of R.C. 2925.03(A)(1), (C)(4)(a), a felony of the fifth degree, with a specification for forfeiture of money in a drug case in violation of R.C. 2941.1417(A).  (Case No. CR18-04-0107, Doc. No. 2).

**{¶4}** The trial court consolidated Triplett's cases and the matters proceeded to trial on August 28, 2018 with the jury returning a guilty verdict on all counts in case number CR18-02-0029 and finding the two hundred and eight-four dollars ($284.00) was subject to forfeiture. (August 28, 2018 Tr. at 286-290); (Case No. CR18-02-0029, Doc. Nos. 94-97). Additionally, the jury found Triplett guilty on the single count indicted in case number CR18-04-0107 with a finding that the four hundred and thirty-eight dollars ($438.00) was also subject to forfeiture. (August 28, 2018 Tr. at 290, 291); (Case No. CR18-04-0107, Doc. Nos. 66, 67).

**{¶5}** At Triplett's sentencing on September 4, 2018, the trial court sentenced him in case number CR18-02-0029 to 12 months in prison on Count One, 12 months in prison on Count Two, and 18 months in prison on Count Three of the indictment. (Case No. CR18-02-0029, Doc. No. 103). The trial court further ordered Triplett to serve the terms consecutively for an aggregate of 42 months in prison. (*Id.*). The trial court, then, sentenced Triplett to 12 months in prison on the single count of the indictment in case number CR18-04-0107 and ordered that term to run consecutive to the 42-month sentence (in case number CR18-02-0029) totaling 54 months in prison. (Case No. CR18-04-0107, Doc. No. 73).

**{¶6}** Triplett filed his notice of appeal in both cases on September 14, 2018, which we consolidated for purposes of appeal. (Case No. CR18-02-0029, Doc. No.

111); (Case No. CR18-04-0107, Doc. No. 82). Triplett raises three assignments of error for our review.

**Assignment of Error No. I**

**The court erred by imposing a sentence unsupported by the record per O.R.C. § 2929.14 (sic).**

**Assignment of Error No. II**

**The verdict in this case is against the sufficiency of the evidence and should be reversed because it violates the Fifth, Sixth, and Fourteenth amendments to the United States Constitution, and Article I, Section 10 of the Constitution of the State of Ohio.**

**Assignment of Error No. III**

**The verdict in this case is against the manifest weight of the evidence and should be reversed because it violates the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and Article I, Section 10 of the Constitution of the State of Ohio.**

For the reasons that follow, we affirm the trial court.

**Assignment of Error No. I**

**The court erred by imposing a sentence unsupported by the record per O.R.C. § 2929.14 (sic).**

*Standard of Review*

{¶7} "Under R.C. 2953.08(G)(2), an appellate court will reverse a sentence 'only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is

otherwise contrary to law.'" *State v. Taflinger*, 3d Dist. Logan No. 8-17-20, 2018-Ohio-456, ¶ 14, citing *State v. Nienberg*, 3d Dist. Putnam Nos. 12-16-15 and 12-16-16, 2017-Ohio-2920, ¶ 8 quoting *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 1.

> Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.

*State v. Sullivan*, 3d Dist. Hancock No. 5-17-09, 2017-Ohio-8937, ¶ 12, quoting *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118, (1954), paragraph three of the syllabus.

{¶8} "Except as provided in * * * division (C) of section 2929.14, * * * a prison term, jail term, or sentence of imprisonment shall be served concurrently with any other prison term, jail term, or sentence of imprisonment imposed by a court of this state, another state, or the United States." R.C. 2929.41(A).

Revised Code 2929.14(C) provides:

> (4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4)(a)-(c).

{¶9} Revised Code 2929.14(C)(4) requires the trial court to make specific findings on the record when imposing consecutive sentences. *State v. Hites*, 3d Dist. Hardin No. 6-11-07, 2012-Ohio-1892, ¶ 11; *State v. Peddicord*, 3d Dist. Henry No. 7-12-24, 2013-Ohio-3398, ¶ 33. Specifically, the trial court must find: (1) consecutive sentences are necessary to either protect the public or punish the offender; (2) the sentences would not be disproportionate to the offense committed; and (3) one of the factors in R.C. 2929.14(C)(4)(a), (b), or (c) applies. (*Id.*; *Id.*).

{¶10} The trial court must state the required findings at the sentencing hearing when imposing consecutive sentences and incorporate those findings into its sentencing entry. *State v. Sharp*, 3d Dist. Putnam No. 12-13-01, 2014-Ohio-

4140, ¶ 50, citing *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 29. A trial court "has no obligation to state reasons to support its findings" and is not "required to give a talismanic incantation of the words of the statute, provided that the necessary findings can be found in the record and are incorporated into the sentencing entry." *Bonnell* at ¶ 37.

*Analysis*

{¶11} In sentencing Triplett, the trial court considered the overriding principles and purposes of felony sentencing at the sentencing hearing and again in each of its judgment entries. (September 4, 2018 Tr. at 12-15); (Case No. CR18-02-0029, Doc. No. 103); (Case No. CR18-04-0107, Doc. No. 73). Further, the sentences imposed by the trial court were within the statutory ranges for each offense. *See* R.C. 2929.14(A)(3)(b)(4)-(5). The record demonstrates that the trial court determined that Triplett had a history of committing drug offenses, including while he was under probation and parole supervision, within thirty (30) days of being released from prison, and while he was awaiting trial on the instant offenses. (August 28, 2018 Tr. at 102-121, 123-126); (September 4, 2018 Tr. at 4, 9, 10, 17).

{¶12} Nevertheless, Appellant contends that the trial court erred by using Triplett's presentence investigation report ("PSI") from 2016. We disagree. To this contention, the record reflects that the trial court was in the process of ordering a new PSI after Triplett was convicted, when Triplett requested to proceed (with

sentencing) to "get it over with."  (August 28, 2018 Tr. at 292, 293).  Even though an updated PSI may have flushed out more facts related to the instant offenses, the failure to order an updated PSI was not contrary to law, especially, in light of the fact that, Triplett had just been released from prison when some of his new charges were committed, and while he was released on bond when he committed the other charge.  Thus, Triplett has not provided us with how he was prejudiced by the trial court's failure to order an updated PSI in light of these facts.

{¶13} Finally, the appellant argues that the trial court erred in its finding (that) he showed no remorse during the course of the sentencing hearing. Specifically, Appellant opines:

> [t]he lack of remorse was *mentioned time and time again by the Court,* despite the fact that Triplett actively showed a sense of remorse and willingness to be accountable for his action, especially for the sake of his four children.

(Emphasis added.) (Appellant's Brief at 4).  In our review, we note that the appellant failed to direct us to specific instances in the record to support his assertion that the trial court erred by failing to consider Triplett's remorse.  We recognize that the trial court stands in the best position to determine the earnestness of those that stand before the bench and to weigh their credibility.  *State v. Nutter*, 3d Dist. Wyandot No. 16-01-06, 2001-Ohio-2253, 2001 WL 961748, *2.  Here, we cannot find that the trial court's determination that Triplett's reoffending, both within thirty (30)

days of his release from prison and while out on bond, was an inference that demonstrated an absence of genuine remorse nor can we find this implication was contrary to law.

{¶14} Accordingly, Appellant's first assignment of error is overruled.

### Assignment of Error No. II

**The verdict in this case is against the sufficiency of the evidence and should be reversed because it violates the Fifth, Sixth, and Fourteenth amendments to the United States Constitution, and Article I, Section 10 of the Constitution of the State of Ohio.**

{¶15} Next, we turn to Triplett's final two assignments of error. Here, Triplett only argues that the verdicts in Count Two and Three in case number CR18-02-0029 were not support by sufficient evidence and are also against the manifest weight of the evidence. Thus, we need not address whether Count One in case number CR18-02-0029 and Count One in case number CR18-04-0107 were not supported by sufficient evidence or were against the manifest weight of the evidence. Manifest "weight of the evidence and sufficiency of the evidence are clearly different legal concepts." *State v. Frye*, 3d Dist. 2018-Ohio-894, ¶ 12, citing *State v. Thompkins*, 78 Ohio St.3d 380, 389, 678 N.E.2d 541, 547 (1997), *superseded by state constitutional amendment on other grounds* as stated in *State v. Smith*, 80 Ohio St.3d 89, 684 N.E.2d 668 (1997). Therefore, we will address each legal concept, separately.

*Standard of Review (Sufficiency of the Evidence)*

**{¶16}** "Whether there is legally sufficient evidence to sustain a verdict is a question of law." *State v. Davis*, 3d Dist. Seneca No. 13-16-30, 2017-Ohio-2916, ¶ 14, citing *State v. Berry*, 3d Dist. Defiance No. 4-12-03, 2013-Ohio-2380, ¶ 19 citing *Thompkins* at 386. "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Carpenter*, 3d Dist. Seneca No. 13-18-16, 2019-Ohio-58, ¶ 13, citing *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1981), paragraph two of the syllabus, *superseded by state constitutional amendment on other grounds*, *State v. Smith*, 80 Ohio St.3d 89, 684 N.E.2d 668 (1997). Accordingly, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* "In deciding if the evidence was sufficient, we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Jones*, 1st Dist. Hamilton Nos. C-120570 and C-120571, 2013-Ohio-4775, ¶ 33, citing *State v. Williams*, 1st Dist. Hamilton No. C-110097, 2011-Ohio-6267, ¶ 25. *See also State v. Berry*, 3d Dist. Defiance No. 4-12-03, 2013-Ohio-2380, ¶ 19 ("Sufficiency of the evidence is a test

of adequacy rather than credibility or weight of the evidence."), citing *Thompkins* at 386.

*Analysis (Sufficiency of the Evidence)*

**{¶17}** We begin by addressing Triplett's sufficiency of the evidence argument as it relates to case number CR18-02-0029 and his conviction for Count Two, trafficking in cocaine.

*(Case No. CR18-02-0029, Count Two, trafficking in cocaine)*

R.C. 2925.03 provides, in pertinent part:

(A)  No person shall knowingly do any of the following:

(1)  Sell or offer to sell a controlled substance or a controlled substance analog;

(C)  Whoever violates division (A) of this section is guilty of one of the following:

(4)  If the drug involved in the violation is cocaine or a compound, mixture, preparation, or substance containing cocaine, whoever violates division (A) of this section is guilty of trafficking in cocaine. The penalty for the offense shall be determined as follows:

(a)  Except as otherwise provided in division (C)(4)(b), (c), (d), (e), (f), or (g) of this section, trafficking in cocaine is a felony of the fifth degree, and division (B) of section 2929.13 of the Revised Code applies in determining whether to impose a prison term on the offender.

R.C. 2925.03(A)(1)(C)(4)(a).

{¶18} To prove that Triplett committed the offense of trafficking in cocaine, the State called two witnesses, Tyler Queen ("Queen"), the confidential informant, and Detective Craig Comstock ("Detective Comstock") of the Bellefontaine Police Department.

{¶19} Appellant argues that the only evidence offered by the State regarding the January 17th trafficking conviction was Queen's testimony, audio surveillance with poor audio quality and static, and a "dark" video. We disagree.

{¶20} The record reveals that late in the afternoon on January 17, 2018, Queen purchased $80 dollars' worth of crack cocaine from Triplett during a controlled narcotics-operation working in collaboration with the Task Force. (August 28, 2018 Tr. at 111, 115, 175, 223). (*See also* State's Ex. 4). Queen testified that he arrived at Triplett's apartment, on foot, after texting Triplett to arrange the purchase of crack cocaine. (*Id*. at 111-113, 116-118, 230). (*See also* State's Ex. 25). Queen waited behind the apartment for Triplett to appear. (*Id*. at 117). (*See also* State's Ex. 25). Triplett exited the front door of the apartment and walked to the back of the apartment complex with a bag of crack cocaine in his hand. There, the two exchanged the money for the drugs. (*Id*. at 116-118, 230). (*See also* State's Ex. 25). After the drug buy concluded, Queen turned and walked away. (*Id*. at 115, 118, 230). (*See also* State's Ex. 25). Queen acknowledged that the video of the transaction was too dark to really see anything. (*Id*. at 115, 122).

However, the debriefing audio recording (containing Queen's statements to Task Force deputies) made on January 17, 2018 at 6:31p.m. following the controlled buy was played in open court to the jury. (*Id*. at 115-117, 230). (*See also* State's Ex. 25).

{¶21} On cross-examination, Queen testified that he was required to change clothes prior to the operation into designated clothing provided by the Task Force. (*Id*. at 122). On re-direct, Queen testified that he was wearing audio recording equipment provided by the Task Force at the time of the drug buy. (*Id*. at 124-126, 230). (*See also* State's Ex. 24).

{¶22} Detective Comstock testified that he was present for the entire operation, pre- and post-operation, and that Queen was under audio surveillance during the entire operation and video surveillance, when possible, for Queen's safety. (*Id.* at 172, 174, 175). Detective Comstock also testified that he provided Queen with the $80 for the operation which was photographed and admitted into evidence as State's Exhibit 4. (*Id*. at 175, 223). (*See also* State's Ex. 4). Detective Comstock also testified that after the drug buy Queen gave him the drugs (that were purchased from Triplett) which were immediately weighed[1] and field tested[2]. (*Id.*); (*Id*.).

---

[1] The drugs weighed .7 grams. (August 28, 2018 Tr. at 175).
[2] The drugs field tested positive, blue indicating positive for cocaine. (*Id.*)

**{¶23}** In addition to the audio and video evidence of the drug buy, which we find to be of poor quality, the jury heard the testimonies of Queen and Detective Comstock and as well as the audio debriefing. Further, Queen's subsequent possession of the cocaine and the absence of the marked money (provided by the Task Force) is circumstantial evidence that a drug transaction involving Queen and Triplett took place. Nevertheless, Appellant argues Queen's credibility is questionable due to his criminal history and his desire to avoid a four-month sentence for a parole violation as a result of a recent relapse. (*Id.* at 99-101) (*See also* Appellant's Brief at 8). We find this argument without merit. Sufficiency is a quantitative question not a qualitative one. *See State v. Berry*, 3d Dist. Defiance No. 4-12-03, 2013-Ohio-2380, ¶ 19 ("[s]ufficiency of the evidence is a test of adequacy rather than credibility or weight of the evidence."), citing *Thompkins* at 386. Even though, the credibility of Queen was at issue, the jury is the trier of fact and is permitted to judge the credibility of the witnesses accordingly. *See State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212, 213 (1967).

**{¶24}** Thus, we conclude that the State presented sufficient evidence, absent the audio and video content, that Triplett knowingly sold a controlled substance to Queen.

*(Case No. CR18-02-0029, Count Three, possession of cocaine)*

**{¶25}** Next, we address Triplett's sufficiency of the evidence argument as to Count Three, possession of cocaine in case number CR18-02-0029.

R.C. 2925.11(A), (C)(4)(b), provides, in relevant part:

(A)  No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog.

(C)  Whoever violates division (A) of this section is guilty of one of the following:

(4)  If the drug involved in the violation is cocaine or a compound, mixture, preparation, or substance containing cocaine, whoever violates division (A) of this section is guilty of possession of cocaine. The penalty for the offense shall be determined as follows:

(b)  If the amount of the drug involved equals or exceeds five grams but is less than ten grams of cocaine, possession of cocaine is a felony of the fourth degree, and division (B) of section 2929.13 of the Revised Code applies in determining whether to impose a prison term on the offender.

R.C. 2925.11(A),(C)(4)(b).

**{¶26}** Appellant argues that the evidence does not support that:  Triplett was a resident of Apartment 5 located at 555 Newel Street; and that Triplett possessed

-16-

or used the crack cocaine discovered during the execution of the search warrant at the apartment. In answer to these questions, the State presented two witnesses assigned to the Task Force, Detective Brent Joseph ("Detective Joseph") of the Logan County Sheriff's Office and Detective Comstock of the Bellefontaine Police Department.

{¶27} Detective Joseph testified that the search warrant was executed by the Task Force on February 3, 2018 at 555 Newel Street, Apartment 5, in Bellefontaine, Ohio, and that the apartment was leased to Triplett's girlfriend, Kaitlyn Whiting. (August 28, 2018 Tr. at 132, 133, 140, 141). During the search of the apartment, the baggie containing crack cocaine was located in a dresser drawer[3]. (*Id.* at 135, 141, 142). Detective Joseph testified that the Task Force had the apartment under surveillance, and that, Triplett was seen coming to and from the apartment on a daily basis[4]. (*Id.* at 144).

{¶28} Detective Comstock testified to personally seeing Triplett going in and out of the apartment daily and to Triplett parking his vehicles at the apartment overnight. (*Id.* at 172, 176, 203, 207, 211, 215). He further testified that some of Triplett's clothing was located in the bedroom where the drugs were located. (*Id.*

---

[3] The dresser drawer contained both male and female clothing. (August 28, 2018 Tr. at 141, 142).
[4] It is worth noting that the location of the controlled narcotics-operations for the January 5th and January 17th drug buys were also at the 555 Newel Street address just outside of the apartment complex. (*Id.* at 113, 114, 144).

at 214). More importantly, Detective Comstock interviewed Triplett (after the execution of the search warrant) wherein Triplett admitted that the drugs located in the apartment were his. (*Id*. at 192).

{¶29} The record supports that the appellant was more than a casual visitor of the apartment by virtue of his daily appearances there, by parking his vehicles at the apartment overnight, and through the discovery of his clothing found in the bedroom where the drugs were found. More importantly, Triplett *admitted* to Detective Comstock that the drugs found in the bedroom dresser belonged to him.

{¶30} Viewing the evidence in the light most favorable to the State, Triplett's trafficking and possession convictions in Count Two and Count Three of the indictment in case number CR18-02-0029 are grounded on sufficient evidence.

**Assignment of Error No. III**

**The verdict in this case is against the manifest weight of the evidence and should be reversed because it violates the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and Article I, Section 10 of the Constitution of the State of Ohio.**

*Standard of Review (Manifest Weight of the Evidence)*

{¶31} Appellate Courts "must review the entire record, weigh the evidence and all the reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the factfinder 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must

be reversed and a new trial ordered.'" *State v. McBeth*, 3d Dist. Seneca No. 13-18-19, 2019-Ohio-59, ¶ 7 citing, *State v. Brentlinger*, 3d Dist. Allen No. 1-16-23, 2017-Ohio-2588 ¶ 36, quoting *Thompkins* at 387.

**{¶32}** An appellate court must, however, allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses. *DeHass* at 231. We sit as the "thirteenth juror". *State v. McBeth*, 3d Dist. Seneca No. 13-18-19, 2019-Ohio-59, ¶ 7 citing, *State v. Davis*, 3d Dist. Seneca No. 13-16-30, 2017-Ohio-2916, ¶ 17, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541, 546 (1997); *see also State v. Davis*, 3d Dist. Allen No. 1-17-44 and 1-17-45, 2018-Ohio-4368, 2018 WL 5433883 ¶ 62, citing, *Phelps v. Horn's Crop Serv. Ctr.*, 3rd Dist. Wyandot No. 16-89-8, 1990 WL 157282 *2 (holding that the choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact).

*Analysis (Manifest Weight of the Evidence)*

At the outset, we note App.R. 16(A)(7) provides:

(A) Brief of the Appellant. The appellant shall include in its brief, under the headings and in the order indicated, all of the following:

* * *

(7) An argument containing the contentions of the appellant with respect to each assignment of error presented for review and the

> *reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies.* The argument may be preceded by a summary.

(Emphasis added.) App.R. 16(A)(7).  Under this assignment, Appellant directs us to the standard of review relative to his argument in assignment of error two.  More importantly, Appellant fails to provide any authority to support his proposition that the verdict in this case was against the manifest weight of the evidence.  Thus, the appellant has failed to present a legal argument in this assignment, rendering his assignment of error a nullity pursuant to App.R. 12(A)(2).

{¶33} Nevertheless, we will address this assignment of error on its merit as to Count Two (trafficking in cocaine) and Count Three (possession of cocaine) in case number CR18-02-0029.  In our review, we acknowledge eight factors to assist us in determining whether a verdict is against the manifest weight of the evidence.  They are:

1. A reviewing court is not required to accept the incredible as true;
2. Whether the evidence is uncontroverted;
3. Whether a witness was impeached;
4. What was *not* proved;
5. Certainty of the evidence;
6. Reliability of evidence;
7. Whether witness' testimony is self-serving;
8. And whether evidence is vague, uncertain, conflicting, and fragmentary.

(Emphasis added.) *State v. Davis*, 3d Dist. Allen No. 1-17-44 and 1-17-45, 2018-Ohio-4368, ¶ 63, citing *State v. Mattison*, 23 Ohio App.3d 10, 14, 490 N.E.2d 926 (8th Dist.1985).

*(Case No. CR18-02-0029, Count Two, trafficking in cocaine)*

*(Uncontradicted Evidence)*

**{¶34}** In the case before us, the appellant's evidence did not contradict the State's evidence concerning the January 17th controlled drug buy as set forth in Count Two. The record supports that Queen, the State's confidential informant, met Triplett behind Triplett's apartment complex on Newel Street and engaged in a drug transaction. Triplett and Queen were under surveillance by the Task Force during the entire operation. After the drug buy concluded, Queen was debriefed by Detective Comstock and handed over the drugs (to Detective Comstock) that he purchased from Triplett. The drugs field tested positive for cocaine, were photographed, weighed, and were sent to the Ohio Bureau of Criminal Investigation ("BCI") where they were found to be cocaine.

*(Impeached Witnesses)*

**{¶35}** A review of the record reveals that no witness for the State was successfully impeached.

*(Self-Serving Testimony)*

**{¶36}** Appellant argues that Queen's testimony was self-serving. We conclude that Queen did benefit from the work he provided as a CI for the Task Force. Thus, he may have had credibility issues as to why he was working with the Task Force, but ultimately, the jury was permitted to determine the weight of that credibility. Thus, as to this factor, Appellant's argument is not compelling. (*See* August 28, 2018 Tr. at 129, 130).

*(Vague, Uncertain, Conflicting, or Fragmentary Evidence)*

**{¶37}** The record does not support a finding that the evidence was vague, uncertain, conflicting, or fragmentary. Each witness that testified for the State provided information to develop the facts at hand. Queen, the State's confidential informant, testified that he purchased crack cocaine from the defendant at a location adjacent to Triplett's apartment located at 555 Newel Street. Detectives Joseph and Comstock testified that they participated in the controlled drug buys with Triplett, and that, the Task Force conducted surveillance of Triplett before, during, and after the buys. Further, Detective Comstock testified that Triplett admitted that the drug buys found in the apartment (on Newell Street) were his.

**{¶38}** Thus, upon our review, we conclude that the weight of the evidence supports Appellant's conviction for the offense of trafficking in cocaine committed on January 17th. We further conclude that the jury did not lose its way and create

such a manifest miscarriage of justice in convicting Appellant of trafficking in cocaine as it relates to Count Two of the indictment.

**{¶39}** Accordingly, we overrule Appellant's third assignment of error as it relates to Count Two in case number CR18-02-0029.

*(Case No. CR18-02-0029, Count Three, possession in cocaine)*

**{¶40}** Next, we turn to Count Three, possession of cocaine. Here, Appellant argues that the apartment, the dresser, and the drugs found were not his and could have been accessed by someone else. (Appellant's Brief at 9). Once again, using the factors outlined above we will review whether the weight of the evidence the State produced establishes that the appellant had possession of the cocaine located in the dresser drawer.

*(Uncontradicted Evidence)*

**{¶41}** Initially, we note that Appellant did not present evidence that contradicted the State's evidence at trial. Even though the appellant contends that the crack cocaine located in the dresser drawer in the upstairs bedroom of apartment was not his, Appellant's admission (to Detective Comstock) and the evidence introduced by the State indicate otherwise.

*(What was not proved)*

**{¶42}** Appellant argues that others may have had an opportunity to access the drugs in the dresser drawer. However, the record is silent that anyone ever did

access the drawer, other than, Triplett's live-in girlfriend, who had no involvement in the drug trade despite her relationship with Triplett. (*See* August 28, 2018 Tr. at 144, 145). Relative to this argument (of opportunity) the record supports that only Triplett had access to the dresser drawer which contained the crack cocaine and was concurrently convicted of drug trafficking in crack cocaine adjacent to the very same apartment complex. We are not required "to accept the incredible as true." *State v. Davis*, 3d Dist. Allen No. 1-17-44 and 1-17-45, 2018-Ohio-4368, ¶ 63, citing *State v. Mattison*, 23 Ohio App.3d 10, 14, 490 N.E.2d 926 (8th Dist.1985), e.g. *Schaefer v. Cincinnati*, 75 Ohio App. 288, 292, 62 N.E.2d 102 (1st Dist.1945).

*(Impeached Witnesses)*

{¶43} A review of the record reveals that no witness for the State was successfully impeached.

*(Self-Serving Testimony)*

{¶44} The record reveals that there was no self-serving testimony in this case as it relates to Count Three. Accordingly, on review, we do not find indicia of self-serving testimony.

*(Vague, Uncertain, Conflicting, or Fragmentary Evidence)*

{¶45} There was no vague, uncertain, conflicting, or fragmentary evidence in the record.

**{¶46}** Accordingly, we find that the weight of the evidence supports Appellant's conviction. We further find that the jury did not lose its way and create a manifest miscarriage of justice in convicting Appellant of possession of cocaine in Count Three of the indictment in case number CR18-02-0029. Consequently, we overrule Appellant's third assignment of error as it relates to Count Three.

*Conclusion*

**{¶47}** Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we overrule all of Appellant's first, second, and third assignments of error and affirm the judgments of the trial court.

*Judgments Affirmed*

**SHAW and WILLAMOWSKI, J.J., concur.**

**/jlr**